Did the court get an excerpt of record in this case? Reviewing the file this week, I couldn't tell from our file whether it was submitted and whether I need to correct that. I didn't hear anything from respondents on the issue either. Well, we must have. I've got pieces of the administrative record here. Yeah, we got the A file. All right. Well, if it was a problem, I would provide an excerpt of record, which I can't tell was ever submitted. Well, if you're not sure, out of an abundance of caution, go ahead and file your copies of the E.R. And if it's a duplicate, then we'll toss them. If we don't have them, then we've got them. All right. So this is a matter that really deals with fairness. And Mr. Rubio was not deportable at the time in 93 when he was convicted of domestic violence. It was not a deportable offense and had no immigration consequences for him. The fact of the fiction that his time, you see, his time in the United States stops at that point is impermissible retroactivity. I guess when we look at impermissible retroactivity in anything but a criminal case, aren't we simply looking for the intent of Congress? In an immigration context, if it's clear that's true, the intent of Congress, Congress can change immigration law almost. But didn't Congress, when it got to Herrera, make it pretty clear that they wanted the stop time effect of an earlier conviction even to apply to any case that went into removal proceedings after, say, 1997, whenever it was? I don't agree that they made that clear. The language is ambiguous even there in Section 240A.D.1. He was not rendered inadmissible by that conviction or at that time excludable. He was only rendered inadmissible when the law was changed. But he was not on notice of the consequences of his plea, which is the same rationale in St. Cyr. He had settled expectations. Was he ñ did he ñ when he was convicted in 1993, did he plead or was he trying? Everything was a plea. All of his cases are pleas. But isn't he being re-examined? Was he removed because of another domestic spousal abuse crime that he pled guilty to in February 1999? Yes. That's what brought him. So he can't really say that at that time he didn't understand what the consequences would be, can he? I mean, that's after Herrera has gone into effect. He didn't understand the consequences of the prior case. I mean, that would have ñ I understand. But his second conviction in February 1999 is the grounds on which the government is seeking to remove him now, is that right? Yes. He is removable. And he has ñ his criminal record does not make him ineligible for cancellation. He has ñ But it does make him ineligible for Section 212C relief, does it not? Yes. I agree that because of his later conviction, he can't apply for 212C. All right. But under cancellation, if he had a long enough period of residence, he might be eligible for that. Yes. But for the 93 conviction, according to the government, that's when it erupts the term of residence and makes him ineligible for that relief too. Right. He needs ñ If he only had the 99 conviction and not the 93 conviction, he would have a long enough period of residence. Certainly he would. Yeah, okay. And the only criminal record that bars cancellation would be aggravated felony. This is non-aggravated felony, even though it's being deemed a crime of moral turpitude, which I've also argued against. It doesn't ñ even a series of them does not bar him from cancellation. Its congressional intent about stopping time was mainly about people running up the 7 years after they were put into deportation proceedings. As their reply brief demonstrates, the matter of the case of Ramp v. INS cites a congressional intent. And this is ñ this does not serve a public purpose of cutting off his time. He's really a good man, and he has extremely good equities. Apparently he's got a violent temper, though. That seems to be part of his problem. Well, he had a difficult relationship. I don't know how much it was his temper or how much it was his ñ So he's a good man other than the fact that he occasionally beats his significant other? Is that the position you're taking? Well, it's ñ it's beyond the scope of the Court to look at the facts of his personal ñ But you're arguing that it's not a crime of moral turpitude. And I guess the question I have under a decision in Gregida v. the INS where we specifically held that spousal abuse is a crime of moral turpitude, why shouldn't that same rule apply to a significant other, even though they might not be married? I don't see what the factual distinction is that makes a difference from a legal standpoint. I discussed that in my brief. I do not really urge the Court to make that distinction. It was left open in the matter of Gregida, but I don't urge the Court to adopt a rule saying a cohabitant is different from a spouse for this reason. Okay. So you're not ñ you agree with me that if Gregida is good law, that the same principle ought to apply? I disagree with Gregida. I think it is not a well-reasoned case, and I would urge the Court to depart from it if necessary. We can't ñ we don't have the power to do that with regard to the rule it stands for. The question is, does the rule apply differently in a situation where the victim is an unmarried significant other in a domestic relationship as opposed to a spouse? That was a question the Court explicitly left open. It's open ñ still open to the Court to make a ruling that way, but I cannot strongly urge that. But isn't it squarely presented in this case? Because that ñ the Board has taken the position that he is removable based upon the fact that he committed a crime of moral turpitude here. Well ñ And it is unresolved under Ninth Circuit as to whether Gregida applies to ñ the Gregida rule applies to these facts. So don't we need to address it if we decide the Board is correct? I think ñ before reaching that, there's a question of whether the retroactivity is ñ No, I understand. We have to resolve that other issue first. But then once we've done that, I guess maybe we don't ñ we might not need to reach it if we decide the decision that it's not impermissibly retroactive to stop the clock based on the 93. If it ñ if it is impermissibly retroactive, you don't reach it. If it's not impermissibly retroactive ñ Then we would have to reach it. Yes. Yeah. Okay.  That helped. I want to reserve a few minutes. All right. Good morning, Your Honors. May it please the Court. I'm Anthony McCaslin. I represent the Attorney General in this case. The position is statutory and ineligible for cancellation of removal because his conviction for spousal abuse stopped his approval of the seven years of continuous residency, a physical presence necessary for cancellation. By the plain language of INN 240-AD1, it provides that the period of continued residence ceases when the alien commits an offense that renders them inadmissible. In this particular case, as alluded earlier in the argument, he was convicted in 1993, his second of four convictions for spousal abuse under the same California statute. As Judge Tolman pointed out, in Gregera, this Court found that spousal abuse is a crime involving moral turpitude that renders one inadmissible under the INA. As such, that crime in 1993 clearly stopped his time of approval of residency. And Congress made it clear, Judge Canby pointed out, and this is a permanent rules case, that after April 1st, 1997, the permanent rules apply. And this stop time rule certainly applies to those aliens put in removal proceedings after that date, which Petitioner is one of those. Briefly on the Gregera issue that was brought up, while the Court did leave it open, there is no distinguishing factor between one that is a spouse and one that is cohabitating with another person, especially in this particular case where it's fairly conceded that this is a long-term relationship, at least 17 years at the time of the immigration hearing. If it's still occurring, it's, you know, well over 20 by now. There are two children from this marriage. And using the language that this Court used in Gregera, this is obviously a relationship of trust and dependent on each other as partners. So there is no really meaningful distinguishing factor between those who are married, as Gregera pointed out, and those who are not. I'd just like to point out that in the – earlier in this Court's decision, in Ram, which was a transitional rule case, they found that the stop-time rule, the other portion of the stop-time rule in cancellation, the service of a charging document, was not infamously retroactive, because Congress can change, can do what they want concerning the stop-time laws. And in that particular case, which was a transitional rule case and not a permanent rule case, they found it was not infamously retroactive. So in this case, which is a permanent rule case, their rationale in Ram, this Court's in this particular case. The Court's petitioner committed a spousal abuse crime. Kennedy. Have we already decided under the permanent rules that the stop-time rule applies to convictions in the past and stuff? No, Your Honor. I have not been able to find – I'm just getting these cases now, I suppose. Yes, Your Honor. I have not – the Board has. But this Court has not – my research has not found that any Court has looked at that particular section of the stop-time rule concerning crimes committed in the language in that section of the statute. Subject to the Court's questions. That concludes the order. Okay. How does the Congress phrase the – in the permanent rules, how is it phrased that makes it clear that those rules apply to a? They do it in the – in the passage of ARERA, in the first section of ARERA, which makes the changes in 1996 effective to every alien who has been issued a notice to appear after April 1st, 1997. And this Court has upheld that in Castro-Baez. And continuous residence is terminated, I guess, when the alien is served or when he commits particular certain specified offenses, whichever is earliest, I guess. That's right. That's the term they use. That's right, Your Honor. That's the termination in the cancellation – in the physical presence part of the statute, the cancellation. That's what I was kind of getting at. Yes, Your Honor. Okay. All right. Thanks. Thank you. Thank you. Any rebuttal? RAM should be distinguished. Those Petitioners had no status. They'd overstayed a visitor visa, applied for asylum. And years later, after two trips to the Ninth Circuit, they then wanted to apply for suspension, having seven years after beginning of proceedings. And the law changed, and the rules applied to them. But in that case, congressional intent was clearly directed to stop that very tactic. In this case, Mr. Rubio-Perez is a permanent resident. He's been here for 27 years, 28 years. And he had expectations which are being defeated retroactively, without proper notice to him and without a clear statement from Congress that it has to be done that way. And he should be allowed a chance to get his waiver, his cancellation removal. All right. Thank you. Thank you. This matter will stand submitted in X-Trade v. Osung Corporation. That's submitted.
judges: Pregerson, Canby, Tallman